IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-01899-PAB-KLM

GERALD LEE PATTERSON,

      Plaintiff,

v.

GEORGE SANTINI, M.D.,
CAMACHO, P.A., and
FIVE JOHN/JANE DOES,

      Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendants Santini and Camacho's Motion to

Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 17; Filed December 6, 2011]

(the "Motion").   Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1C.3, the

Motion is referred to this Court for Recommendation [#18].   Plaintiff filed a Response in

opposition to the Motion on December 19, 2011 [#19], and Defendants did not file a Reply.

The Motion is ripe for review.  The Court has reviewed the case file and the applicable law,

and is fully advised in the premises.   For the reasons stated below, the Court

**RECOMMENDS** that the Motion be **DENIED**.

**I.  Factual and Procedural Background**

      Plaintiff, who proceeds in this matter *pro se*, is a federal prisoner presently

incarcerated at the Federal Prison Camp in Florence, Colorado.  *See* [#1].  Plaintiff brings

this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to address the medical care that he has received for neck pain while incarcerated at the Federal Prison Camp ("FPC"). *See id.* Plaintiff presents one claim asserting that the Defendants were deliberately indifferent to his allegedly serious medical problem which causes him pain and limits his activities, referring to herniated discs and arthritis in his neck. *Id.* at 3-4. Plaintiff explains that he is 73 years old, and has "suffered increasingly more pain since [his] arrival at the FPC . . . [on] June 1, 2010."[1] *Id.* at 4. Plaintiff attests that he reported his medical problems to Defendants Santini and Camacho "repeatedly," but did not receive care for eight months. *Id.*

Plaintiff alleges that Defendant Santini "finally" saw him and prescribed Aleve. *Id.* Plaintiff claims that the commissary did not carry Aleve "for a long time," but then received some, which Plaintiff purchased. *Id.* Plaintiff states that the Aleve did not provide him relief from his pain. *Id.* After further requests for care by Plaintiff, Defendant Santini ordered an x-ray, which Plaintiff believes "confirmed [his] complaints." *Id.* At that time, he was prescribed "Gabadenten," which Defendant Camacho "doubled" in response to Plaintiff's continuing complaints of pain. *Id.* Plaintiff asserts that this prescription caused him to fall asleep while standing or walking, but provided minimal relief for his pain. *Id.* Plaintiff alleges that Defendant Santini did not help him when he complained about the side effects of the "Gabadenten." *Id.*

---

[1] For the purposes of resolving the Motion to Dismiss, and as further explained below, the Court takes as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Complaint [#1]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiff recounts that Defendant Santini was replaced by Dr. Wilson, who prescribed a different medication for Plaintiff, which Plaintiff concedes as helpful for his pain "for a short time." *Id.* Plaintiff asserts that he continues to have "unremitting pain because all Defendants want to do is treat symptoms." *Id.* Plaintiff contends that "it is clear that surgery is needed." *Id.* at 3. Plaintiff requests relief in the form of compelled surgery and money damages. *Id.* at 8.

Defendants Santini and Camacho responded to Plaintiff's Complaint with the Motion at issue. [#17]. Defendants assert that they are entitled to qualified immunity from Plaintiff's claim. *Id.* at 9. Defendants contend that Plaintiff has not stated a plausible violation of the Eighth Amendment, because he "has not alleged a medical condition that has been diagnosed as requiring surgery," and his complaint "amounts to a mere disagreement over the best course of medical care." *Id.* at 7-8. Further, Defendants aver that Plaintiff cannot show that Defendants acted with indifference to his medical complaints, because they "evaluated him, obtained an x-ray, and prescribed several types of medication." *Id.* at 9. To the extent Plaintiff seeks injunctive relief, Defendants argue that his suit against them pursuant to *Bivens* is in their individual capacities, and Defendants lack the individual authority to direct the Bureau of Prisons to order surgery. *Id.* at 4 n.6.

In Response, Plaintiff expounds on the allegations stated in his Complaint. *See* [#19]. First, Plaintiff challenges the Rule 12(b)(6) standard set forth by Defendants in the Motion. *Id.* at 1-3. Plaintiff believes that the decisions stated in *Erickson v. Pardus*, 551 U.S. 89 (2007) and *Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010) dictate leniency in construing his filings, in consideration of Plaintiff's *pro se* status. *Id.* at 2-3. Plaintiff suggests that he be given leave to amend his Complaint in lieu of dismissal, should the

3

Court find his pleading deficient. *Id.* at 3.

Plaintiff refers to his medical records in support of his Response, and attests that an entry in his medical records dated July 24, 1997 indicates that he "needs surgery on back spurs and arthritis . . . disc disease." *Id.* Plaintiff asserts that he was transferred between different federal correctional facilities, which delayed and ultimately precluded him from undergoing surgery. *Id.* Plaintiff alleges that the U.S. District Court in Missouri ordered that he be kept at the facility in Springfield, Missouri for purposes of completing surgery, to no avail. *Id.* Plaintiff recounts how, "nearly ten years after it was determined that Plaintiff had a condition warranting surgical intervention," medical staff at a correctional facility in Forrest City, Arkansas classified Plaintiff as a "poor candidate" for surgery. *Id.*

Plaintiff contends that Defendants in this matter "have refused to provide an orthopedic consult" to "back up" their conclusion that Plaintiff is too old for surgery. *Id.* at 3-4. Further, Plaintiff avers that Defendants admit that prolonged use of pain medication "has so damaged Plaintiff's liver and kidneys that they can no longer provide [the medications]," but do not suggest alternatives for Plaintiff's pain management. *Id.* at 4. Plaintiff claims that Defendant Camacho should recommend intervention by a medical doctor, and the medical doctor should approve a consultation with a specialist, but Defendants in this matter have refused to do so. *Id.* In light of these facts, Plaintiff states that he has described a plausible claim regarding Defendants' deliberate indifference to his serious medical need, which causes him ongoing pain and limits his activities. *Id.* at 5-6.

## II. Standard of Review

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40

F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero*, 510 F.3d at 1200 (citing *Twombly*, 550 U.S. at 570).  "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, – F.3d –, 2012 WL 364058, at \*2 (10th Cir. 2012) (internal quotations and citations omitted).  Plaintiff is incorrect in his assertion that, as a *pro se* litigant, he is not subject to the pleading standard articulated by the United States Supreme Court in *Twombly* and *Iqbal*, and Plaintiff's reliance on *Erickson* and *Gee* is not contrary to the standard stated herein. *See Erickson*, 551 U.S. at 93 (relying on *Twombly*); *Gee*, 627 F.3d at 1183-84 (relying on and discussing *Twombly* and *Iqbal*).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).  That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 2012 WL 364058 at \*3.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted).

As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*,129 S. Ct. at 1949 (citation omitted).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III.  Analysis

### A.  Qualified Immunity

Defendants assert qualified immunity in their Motion, thus the Court will first examine whether Plaintiff's Complaint passes muster pursuant to Fed. R. Civ. P. 12(b)(6). *Butler v. Rio Rancho Public Schools Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003) ("Since the [Defendant] raised the defense of qualified immunity in its motion to dismiss, we first examine whether [Plaintiff] asserted a violation of federal law in their complaint."). Qualified

6

immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982). "[G]overnment officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. In their Motion, Defendants argue that Plaintiff has not stated a plausible violation of his Eighth Amendment constitutional right to appropriate medical care, and due to this failure, they are entitled to qualified immunity. *See* [#17].

A government official is entitled to qualified immunity from liability for civil damages when his or her allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position. *Harlow*, 457 U.S. at 818 (stating that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate). The Supreme Court has stated that "[f]or executive officials in general . . . our cases make plain that qualified immunity represents the norm." *Id.* at 807. Thus, a government official is entitled to qualified immunity in "[a]ll but the most exceptional cases." *Harris v. Bd. of Educ. of the City of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

Construing the allegations liberally in Plaintiff's favor as it must, as further described below, the Court recommends finding that Plaintiff has stated a plausible violation of his Eighth Amendment rights.  Because such rights were clearly established at the time of the alleged violations in 2010, and a reasonable prison official should have known of the rights, the Court recommends finding that Defendants are not entitled to qualified immunity at this stage of the proceeding.  This Recommendation does not limit the ability of Defendants to resubmit the question of qualified immunity to the Court at a later time, if appropriate.

## B.  Eighth Amendment Protections

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted.  U.S. Const. amend. VIII.  Punishments which "involve the unnecessary and wanton infliction of pain" violate this provision.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment," *id.* at 104 (quoting *Gregg*, 428 U.S. at 173).  To prove a claim of deliberate indifference, a prisoner must establish that (1) he was deprived of a medical need that is, objectively, "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and (2) the defendant knew of and disregarded "an excessive risk to [the prisoner's] health or safety," *id.* at 837.

Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Thus, "a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate

8

receives does not support a claim of cruel and unusual punishment." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). Further, a prisoner does not have a valid claim of deliberate indifference simply because he was denied "a particular course of treatment" that he desired. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006). "[A] prison doctor remains free to exercise his or her independent professional judgment," *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997), and "[m]edical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (quoting *Estelle*, 429 U.S. at 107).

Here, Defendants contest Plaintiff's characterization of his back pain as sufficiently serious for the implication of the Eighth Amendment. [#17] at 7-8. A medical need is sufficiently serious if it is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Ramos*, 639 F.2d at 575 (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.C.N.H. 1977)). In his Response, Plaintiff asserts that a doctor ordered surgery in 1997, and over the years, surgery was delayed by his transfer among correctional facilities. Plaintiff contends that Defendants Santini and Camacho have acted with indifference to that medical directive, and have refused to provide an orthopedic consult to evaluate Plaintiff's complaints of pain. Plaintiff concedes that Defendants Santini and Camacho have prescribed pain medication in response to his complaints. Taken as true, these allegations meet the objective prong of the deliberate indifference evaluation, as the relief Plaintiff seeks, that is, the surgery ordered in 1997, was presumably mandated

by a physician and memorialized in Plaintiff's medical records.  Furthermore, Defendants Santini and Camacho have prescribed treatment for Plaintiff's condition, thereby indicating a need for a doctor's attention.  Thus, the Court recommends finding that Plaintiff plausibly pleads the objective element required for an Eighth Amendment claim.

Regarding the subjective prong, the Court considers whether Defendants intended the deprivation, *i.e.*, acted with deliberate indifference to the harm that could result.  *See Farmer*, 511 U.S. at 837.   The subjective element can only be proved by showing that Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety" or acted with a sufficiently culpable state of mind.  *See id.*  A defendant knew of and disregarded an excessive risk to a prisoner's health or safety when he or she was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* he or she actually drew that inference.  *Id.*

"Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment." *Ramos*, 639 F.2d at 575 (citation omitted).  Here, Plaintiff contends that his medical records indicate the necessity of surgery, yet Defendants Santini and Camacho have refused to provide proper medical care or refer him to personnel who can better evaluate his condition.  Taking Plaintiff's well-pled allegations from his Complaint and Response as true, it appears that Defendants Santini and Camacho have knowledge of Plaintiff's previous diagnosis, yet have failed to address his ongoing pain or refer him to a specialist who can evaluate the directive for surgery.   Thus, the Court recommends finding that Plaintiff plausibly pleads the subjective element required for an Eighth Amendment claim.

The Court is aware that a difference of opinion between a prisoner and prison medical personnel does not state a claim of Eighth Amendment deliberate indifference. "[S]uch a difference of opinion amounts to a medical malpractice claim . . . [which] cannot be the basis for a federal [*Bivens*] action. . . . [A] medical malpractice claim does not become a constitutional violation simply because the plaintiff is a prisoner." *Pearson v. Simmons*, No. Civ.A. 95-3006-GTV, 1998 WL 154552, at *2 (D. Kan. Mar. 17, 1998) (unpublished) (citations omitted) (noting that inmate's allegation that defendants were deliberately indifferent to his medical injury based upon a disagreement about the level of care he received for that injury did not state an Eighth Amendment claim). *See also Bradshaw v. Lappin*, No. 08-cv-02542-PAB-KLM, 2010 WL 908925 (D. Colo. Mar. 11, 2010) (allegations that medical treatment recommended by non-prison medical personnel was not implemented by prison medical staff failed to state an Eighth Amendment claim); *Bastian v. Fortunato*, No. 08-cv-00489-REB-MEH, 2008 WL 4717469 (D. Colo. Oct. 24, 2008) (allegations that prison medical staff deliberately refused to follow instructions of non-prison medical staff failed to state an Eighth Amendment claim). However, at this stage of litigation and pursuant to the Rule 12(b)(6) plausibility standard, Plaintiff's claim arises from either a difference of opinion among prison medical staff, or a denial by one doctor of a course of treatment prescribed by another.

In either event, accepting Plaintiff's allegations as true, Plaintiff suffers pain from a condition diagnosed as needing surgery, Plaintiff's pain is unabated from other courses of medical treatment prescribed by Defendants Santini and Camacho, and Defendants Santini and Camacho are aware of the previous diagnosis and prescribed course of treatment contained in Plaintiff's medical records, yet refrain from addressing other treatment options.

*See Denison v. Colo. Dep't of Corr.*, No. 06-cv-02385-REB-KLM, 2008 WL 732592, at *8 (D. Colo. Mar. 18, 2008) (finding a plausible Eighth Amendment claim based on allegations that "[d]efendants failed to recognize and treat [plaintiff's] serious medical condition of a herniated lumbar disc, have denied him access to a specialist and have discontinued his medication without providing an alternative.").

At this early stage of the proceedings and prior to any discovery, the Court cannot find that Plaintiff has failed to allege enough facts to state a claim to relief under the Eighth Amendment which is plausible on its face.  Taken in the light most favorable to Plaintiff, as required, the allegations are sufficient to state a claim that Defendants Santini and Camacho violated Plaintiff's Eighth Amendment rights by deliberate indifference to his serious medical needs.

In light of this conclusion, the Court recommends denying Defendants' assertion of qualified immunity, because the law governing Plaintiff's claim was clearly established in 2010.   The law governing Eighth Amendment deliberate indifference claims has continuously evolved at least since 1976 (issuance of *Estelle* decision), and the obligations of prison officials pursuant to the Eighth Amendment would have been known to a reasonable prison official at the time of Plaintiff's medical evaluations by Defendants, beginning in 2010.  Thus, the Court believes that Defendants are not entitled to qualified immunity at this stage of the proceeding.

## C.  Suit Against Defendants in their Official Capacities

It is unclear whether Plaintiff sues Defendants in their individual or official capacities. However, Plaintiff seeks both money damages and injunctive relief, which leads the Court to presume that he sues Defendants in both their individual and official capacities.  *See* [#1]

at 8.  Defendants contend that Plaintiff cannot sue Defendants in their official capacities for injunctive relief pursuant to *Bivens*; however, Defendants fail to address the effect of the Tenth Circuit's determination in *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005) (holding that sovereign immunity does not bar an action against federal prison officials for injunctive relief from alleged constitutional violations).  *See* [#17] at 4 n.6. For the reasons stated below, the Court recommends finding that Plaintiff may bring his claim against Defendants in their individual capacities for money damages and in their official capacities for injunctive relief, but may not sue for money damages from Defendants in their official capacities.

Although *Bivens* creates "an implied private action for damages" against federal officers, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001), "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity." *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001); *see also Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1247 (10th Cir. 1989) (holding that the doctrine of sovereign immunity bars *Bivens* claims against federal officials in their official capacities).  "Instead, any action that charges such an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States." *Perrill*, 275 F.3d at 963 (citation omitted).  Further, such a suit for damages against the United States is barred by sovereign immunity unless immunity has been waived.  *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985)).  Therefore, because the doctrine of sovereign immunity bars *Bivens* actions brought directly against the United States, the Court lacks subject-matter jurisdiction to hear official-capacity *Bivens* claims for damages.  *See Tippett v. United States*, 108 F.3d

13

1194, 1196 (10th Cir. 1997) (noting that when "the United States retains its sovereign immunity . . . the district court lacks subject matter jurisdiction to hear the suit"); *Perrill*, 275 F.3d at 962 (noting that an "'official capacity *Bivens* suit' would be an oxymoron").  To the extent that Plaintiff's *Bivens* claim for monetary damages can be construed against Defendants in their official capacities, such request is barred by sovereign immunity, and the Court therefore lacks subject-matter jurisdiction to hear this claim.  *See id.*

Unlike claims for money damages against federal officials in their official capacities, the doctrine of sovereign immunity does not bar Plaintiff's claim against Defendants for injunctive relief from alleged constitutional violations.   *Simmat*, 413 F.3d at 1233. Therefore, the Court recommends finding that Plaintiff may pursue his claim against Defendants in their individual capacities for money damages and in their official capacities for injunctive relief.

## IV.  Leave to Amend

As described herein, the Court premises this Recommendation on the allegations stated in both Plaintiff's Complaint and Response.  The Court considers the allegations in Plaintiff's Response pursuant to its obligation to liberally construe the filings of a *pro se* litigant.  However, the Court believes that the interests of efficiency and clarity require the filing of an Amended Complaint containing *all* of Plaintiff's factual allegations.  Therefore, the Court recommends that, in conjunction with Defendants' Motion being denied, Plaintiff should be instructed to file an Amended Complaint consistent with the findings stated herein.   *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.") (citing *Grossman v. Novell, Inc.*, 120

F.3d 1112, 1126 (10th Cir. 1997)); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise *substantial* issues" (emphasis added)).

### V.  Recommendation

Accordingly, the Court respectfully **RECOMMENDS** that Defendants' Motion [#17] be **DENIED**.

The Court further **RECOMMENDS** that Plaintiff be granted leave to file an Amended Complaint consistent with the findings stated herein and on the required *pro se* prisoner forms used in this District, on or before **April 25, 2012**.  The Court will set a Preliminary Scheduling Conference upon the filing of an Amended Complaint.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: March 28, 2012

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge